**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MELISSA FAYE PHANN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00508** |
| | ) | **Judge Campbell / Frensley** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Plaintiff has filed an accompanying Memorandum. Docket No. 12-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16. Plaintiff has filed a Reply. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for SSI on March 2, 2020, and her application for DIB on

1

March 12, 2020, alleging that she had been disabled since February 27, 2020, due to lower back, anxiety, diabetes, high cholesterol, high blood pressure, and nerves. Docket No. 8, Attachment ("TR"), TR 145, 294, 299, 319.    Plaintiff's applications were denied both initially (TR 123) and upon reconsideration (TR 164).    Plaintiff subsequently requested (TR 188-89) and received (TR 39-71) a hearing.    Plaintiff's hearing was conducted on August 12, 2022, by Administrative Law Judge ("ALJ") Gary Suttles.    TR 39.    Plaintiff and vocational expert ("VE"), Nancy Hughes, appeared and testified. *Id.*

On August 30, 2022, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.    TR 20-38.    Specifically, the ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2.    The claimant has not engaged in substantial gainful activity since February 27, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and sitting, standing, and walking 6 of 8 hours each for a full 8-hour workday. Pushing, pulling, and gross and fine dexterity is unlimited. She is able to bend, stoop, crouch, crawl,

2

balance, twist, squat, and climb stairs and ladders; but should never run.

6.    The claimant is capable of performing past relevant work as a dividing machine operator and motor vehicle assembler, the latter as performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from February 27, 2020 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 25-33.

On August 30, 2022, Plaintiff timely filed a request for review of the hearing decision. TR 289-91.   On April 21, 2023, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction.   42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.   *Id.*

## II.   REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record.   Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.   CONCLUSIONS OF LAW

### A.   Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.   *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369

3

(6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.,* 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*

4

*v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.   *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

## B.   Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.   42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)   If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

5

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. ' 423(d)(2)(B).

### C.   Plaintiff's Statement Of Errors

Plaintiff contends that the RFC determination is unsupported by substantial evidence. Docket No. 12-1, p. 7. Specifically, Plaintiff argues that the ALJ improperly evaluated the opinion of consultative examiner William Huffman, M.D. *Id.* Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

7

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).   Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.   *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).   *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.   Weight Accorded to Opinion of Plaintiff's Consultative Examiner

Plaintiff contends that the ALJ improperly evaluated the opinion of consultative examiner William Huffman, M.D.   Docket No. 12-1, p. 7.   Specifically, Plaintiff argues that the ALJ's determination was not supported by substantial evidence as there was not a reasonable supportability and consistency analysis conducted to explain why Dr. Huffman's opinion that Plaintiff cannot lift over 10 pounds was not adopted.   *See id.* at 8.   Plaintiff contends that the consistency analysis was flawed as the medical visits cited by the ALJ were either consistent with Dr. Huffman's opinion or had nothing to do with Plaintiff's spinal issues.   *See id* at 10-11. Additionally, Plaintiff argues that the opinion mischaracterizes the medical record, so it cannot serve as substantial evidence, claiming the ALJ ignored several pieces of the medical record showing Plaintiff's impairment.   *See id.* at 11.   Plaintiff also asserts that the supportability analysis was insufficient as the ALJ failed to explain why Dr. Huffman's opinion is not supported by his own examination findings.   *See id.* at 13.

Defendant responds that the ALJ's decision was properly considered.   Docket No. 16, p. 2-3.   Specifically, Defendant argues that the ALJ considered the opinions of Dr. Huffman and physical therapist Dilesh Patel and found them unpersuasive, and in explaining why, it complied with the regulatory requirements to rule on persuasiveness of a medical source and provide an explanation regarding the supportability and consistency factors.   *See id.* at 5, 8.   Defendant

8

additionally argues that Plaintiff's emphasis on the results of other examinations are merely invitations for the Court to reweigh the evidence. *See id.* at 8.

Plaintiff replies that the Defendant only cited benign findings and that Defendant, like the ALJ, did not indicate how the positive findings were considered. Docket 17, p. 2. Plaintiff restates her arguments that the ALJ picked and chose elements of the record to support his analysis, and in doing so, mischaracterized the medical evidence. *See id.* at 3-4. She additionally argues that the ALJ did not cite daily activities as a basis for discounting Dr. Huffman's opinion, and her daily activities support rather than detract from his opinion. *See id.* at 5.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed her application after March 27, 2017. Docket No. 8. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider

9

those medical opinions or prior administrative medical findings from that medical source together using the factors listed in _paragraphs (c)(1) through (c)(5)_ of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (_paragraph (c)(1)_ of this section and consistency (_paragraph (c)(2)_ . . . .

**(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in _paragraphs (c)(1) through (c)(5)_ of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (_paragraph (c)(1)_ of this section) and consistency (_paragraph (c)(2)_ of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in _paragraphs (c)(3) through (c)(5)_ of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-

10

supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.**  We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

> **(1)  Supportability.**  The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(2)  Consistency.**  The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(3)  Relationship with the claimant.**  This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.
>
>> **(i)  Length of the treatment relationship.**  The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **(ii)  Frequency of examinations.**  The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **(iii)  Purpose of the treatment relationship.**  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> **(iv)  Extent of the treatment relationship.**  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

11

> **(v)  Examining relationship.**   A medical source may
> have a better understanding of your impairment(s) if he or
> she examines you than if the medical source only reviews
> evidence in your folder.
>
> **(4)  Specialization.**   The medical opinion or prior administrative
> medical finding of a medical source who has received advanced
> education and training to become a specialist may be more
> persuasive about medical issues related to his or her area of specialty
> than the medical opinion or prior administrative medical finding of
> a medical source who is not a specialist in the relevant area of
> specialty.
>
> **(5)  Other factors.**   We will consider other factors that tend to
> support or contradict a medical opinion or prior administrative
> medical finding.   This includes, but is not limited to, evidence
> showing a medical source has familiarity with the other evidence in
> the claim or an understanding of our disability program's policies
> and evidentiary requirements.   When we consider a medical
> source's familiarity with the other evidence in a claim, we will also
> consider whether new evidence we receive after the medical source
> made his or her medical opinion or prior administrative medical
> finding makes the medical opinion or prior administrative medical
> finding more or less persuasive.
>
> **(d)  Evidence from nonmedical sources.**   We are not required to articulate how
> we considered evidence from nonmedical sources using the requirements in
> _paragraphs (a)-(c)_ in this section.

20 C.F.R. § 404.1520c.

Dr. Huffman examined Plaintiff on April 9, 2021.   TR 634-37.   With regards to

Plaintiff's musculoskeletal and neurological examinations, Dr. Huffman stated as follows:

> MUSCULOSKELETAL EXAMINATION: On examination of the dorsolumbar
> spine, she had 80 degrees flexion and 20 degrees extension, 25 degrees right lateral
> flexion and 25 degrees left lateral flexion with pain on range of motion in the
> lumbosacral paravertebral region of her back. On examination of her shoulders,
> elbows, hips, knees, ankles, and wrists, she had normal range of motion without
> pain.
>
> NEUROLOGICAL EXAMINATION: Her gait and station were normal. Her
> cranial nerves were intact. She had 5/5 motor strength in both her upper and lower
> extremities. Her cerebellar function was normal. She had good finger-to-nose and

negative Romberg's bilaterally. She had normal heel-to-toe walking. She was able to stand on her heels and on her toes without difficulty. She was able to stand on her right leg alone and then on her left leg alone without difficulty. Her DTRs were 2+ and equal bilaterally. She had positive SLRs bilaterally at 75 degrees. She had no neurosensory deficits. Rest of the neurological examination was normal.

Rest of the physical examination was normal.

TR 637.

When discussing Dr. Huffman's examination, the ALJ stated:

At her April 2021, consultative examination, the claimant complained of lower back pain with radiation down legs to her knees (Ex. 8F/2). Upon examination, straight leg raising was positive at 75 degrees and she had pain with range of motion. However, gait and station were normal. She had 5/5 motor strength in both her upper and lower extremities, normal heel to toe walking, was able to stand on her heels and toes without difficulty, was able to stand on one leg without difficulty, and had no neurosensory deficits (Ex. 8F/3-4).

TR 31.

Ultimately, the ALJ discounted Dr. Huffman's opinion. As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion.   *20 CFR § 404,1520c(a)*.   In discounting Dr. Huffman's opinion, the ALJ discussed the relevant factors, set forth above.   *See 20 CFR § 404.1520c(c)(1) – (c)(5)*.   Specifically, the ALJ found that Dr. Huffman's opinion was not supported by the objective medical evidence, and was inconsistent with Plaintiff's testimony, his own examination findings, and the overall medical record.   TR 32.   The ALJ explained:

In April 2021, consultative examiner William Huffman, M.D., found that the claimant would not be able to lift over 10 pounds, but could sit up to 7 hours per day, stand for 6 hours per day, and walk for 4 hours per day (Ex[.] 8F/4). This opinion is unpersuasive, as it is unsupported by his own examination findings, which show gait and station were normal, 5/5 motor strength in both her upper and lower extremities, normal heel to toe walking, ability to stand on her heels and toes without difficulty, ability to stand on one leg without difficulty, and no neurosensory deficits (Ex. 8F/3-4). Furthermore, it is inconsistent with the overall

13

evidence, which shows essentially normal physical examinations (Ex. 1F/12, 8f/3-4, 10F/13, 11F/32, and 13F/16).

TR 32.

The ALJ specifically cited to numerous medical reports that essentially showed normal physical examinations. *See* TR 31 (citing TR 443; 584 (finding no acute abnormality); 635-37 (showing lower back pain with radiation down legs, and pain with range of motion, but normal gait, station, and motor strength in extremities); 791 (showing normal gait)). Although Plaintiff argues that none of these visits were related to her spinal impairments, the ALJ also cited to other medical opinions when determining that the claimant has a medically determinable impairment that limits the ability to perform some basic work activities, but ultimately concluded that the Plaintiff's impairments were not severe enough to warrant a limitation to lifting ten pounds. *See* TR 26. In addition to the objective medical evidence, the ALJ additionally acknowledged subjective evidence of Plaintiff's capabilities in forming its conclusion: although the evidence demonstrates the Plaintiff's sufferance from a medically determinable "severe" impairment, it also establishes a capacity to perform some basic activities associated with work. *See* TR 28-32. Consequently, the ALJ's opinion does not mischaracterize the record as it considers the evidence showing the Plaintiff's impairment in addition to evidence that could substantiate a different RFC.

Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. The ALJ acknowledged that the Plaintiff's impairments could cause the alleged symptoms, but concluded that her testimony as to the intensity and limiting effects of those symptoms was inconsistent with her report of her daily activities, explaining that:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms, limitations, and social functioning, which weakens the reliability of her allegations. She reported that she is able to care for her pet, perform personal care, prepare meals, perform household

14

chores and laundry, drive a car, go out alone, shop in stores, handle her finances, spend time with others, and perform hobbies such as watching television and reading, which does not suggest that her symptoms are as limiting as the claimant has alleged in connection with this application (Ex. 5E/1-8, 10E/1-8, and Testimony).

TR 32.

Furthermore, the ALJ noted that the vocational expert's testimony that the claimant could perform the operations of dividing machine operator and motor vehicle assembler was fully persuasive. *See* TR 33. While the ALJ did not explicitly consider the line of questioning based on Dr. Huffman's report, it was not necessary given the ALJ's explanation that Dr. Huffman's opinion was inconsistent with the overall evidence. *See* TR 32, 68-69; *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (noting that an ALJ is only required to incorporate in questions to vocational experts the evidence that they deem credible).

Plaintiff also raises that the ALJ ignored that Dr. Huffman's opinion was consistent with the residual functional capacity evaluation by PT Patel. TR 492-499. The Regulations provide that the ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.1513(d).

Plaintiff asserts that the ALJ did not compare the consistency of this opinion with Dr. Huffman's, but the ALJ's opinion explains why both opinions were found to be unpersuasive; PT Patel's opinion was not supported by his own treatment notes and contained an issue reserved to the Commissioner, while Dr. Huffman's opinion was unpersuasive as the examination

15

findings demonstrated 5/5 motor strength in the Plaintiff's upper and lower extremities, contrary to the Plaintiff's argument that consistency analysis cited only information supporting Dr. Huffman's opinion.   *See* Docket 12-1 at p. 12; TR 31-32.   Although some of the evidence could support a different conclusion, there is still substantial evidence supporting the ALJ's decision.   *See Her*, 203 F. 3d at 389, *citing Key*, 109 F. 3d at 273.   At the appellate level, a reviewing judge is only charged with determining whether the ALJ's determination is supported by substantial evidence, not reexamining the evidence to make a substitute finding of fact.   *See Garner*, 745 F. 2d at 387.   The ALJ fulfilled his duty under the new regulations and properly evaluated the opinion of Dr. Huffman.

**2.   Residual Functional Capacity ("RFC")**

Plaintiff maintains that the ALJ's Residual Functional Capacity determination is unsupported by substantial evidence because the ALJ's evaluation of the consultative examiner's opinion is legally erroneous.   Docket No. 12-1, p. 7.   Specifically, Plaintiff argues that the ALJ failed to follow regulations as he insufficiently explained how the consultative examiner's opinion that Plaintiff cannot lift more than ten pounds was inconsistent with the overall evidence, and that because the ALJ's opinion mischaracterized the record, there is not substantial evidence in support of his findings.   *See id.* at 10-11.   Plaintiff also asserts that the ALJ failed to explain why Dr. Huffman's opinion did not support his own examination findings.   *See id.* at 13.

Defendant responds that the ALJ's decision met the threshold of substantial evidence necessary to support his findings.   Docket No. 16, p. 2-3.   Defendant explains that the ALJ complied with regulatory requirements to rule on persuasiveness and provide an explanation as to the supportability and consistency factors.   *See id.* at 5.   Defendant further asserts that the sufficiency analysis was satisfactory given the doctor's notations in the record, and the

16

consistency factor adequately cited multiple reports, and regulations only require ALJs to provide the specific level of detail that is necessary given the circumstances of the claim. *See id.* at 6-7.

Plaintiff replies that the Defendant attempted to improperly limit the court's review. Docket No. 17. Plaintiff specifically argues that the ALJ only cited benign findings so there was no explanation as to why Dr. Huffman's findings did not support his opinion, and the ALJ broadly mischaracterized the evidence in the record to discount Dr. Huffman's opinion. *See id.* at 2-3.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 ' 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light work. TR 28. The ALJ explained:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and sitting, standing, and walking 6 of 8 hours each for a full 8-hour workday. Pushing, pulling, and gross and fine dexterity is unlimited. She is able to bend, stoop, crouch, crawl, balance, twist, squat, and climb stairs and ladders; but should never run.

*Id.*

In so finding, the ALJ considered the claimant's description of her symptoms and testimony. TR 29-30. Specifically, the ALJ stated:

> The claimant alleged that she is unable to work due to lower back, anxiety, diabetes, high cholesterol, high blood pressure, and nerves (Ex. 1E/2). She reported difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, completing tasks, concentration, understanding, and getting along with others (Ex. 5E/6 and 10E/6). She testified that she injured her back in a fall 3 to 4 years earlier. She stated that she tried to file a Workers Compensation claim but was eventually fired. She asserted that she looked for work, as she drew unemployment benefits until 2021.

> She stated that she has been on insulin for diabetes for about 10 years, and that normal readings run between 110-173. She reported that she has been taking blood pressure medication for about 16 years, and that it is controlled. She denied having any mental health treatment.

> The claimant indicated that she underwent physical therapy for about 10 weeks for back pain, which provided temporary relief. She denied ever having injections or surgery. She stated that she just started taking some prescribed pain medication 3 months ago, but prior to that, she just took over the counter medication for pain relief. She indicated that she last saw her doctor 4 months ago and has never seen an orthopedist. She stated that she uses a heating pad and Bio Freeze to relieve pain. The claimant estimated that she is able to sit for 10 minutes, stand for 5 minutes, walk for 10 minutes, and lift a jug of milk. She denied use of a cane.

> Despite these allegations, the claimant reported relatively normal daily activities that consisted of her ability to care for her pet, perform personal care, prepare meals, perform household chores and laundry, drive a car, go out alone, shop in stores, handle her finances, spend time with others, and perform hobbies such as watching television and reading (Ex. 5E/1-8, 10E/1-8, and Testimony).

*Id.*

The ALJ also considered a statement by Plaintiff's daughter, stating:

> The claimant's daughter, Maranda Vecchio, stated that she requires reminders to check her blood sugar and take insulin before bed. She also indicated that her mother has trouble with lifting, squatting, bending, standing, reaching, sitting, stair climbing, concentration, following instructions, and getting along with others (Ex. 4E/1-8). The statement of Ms. Vecchio has been considered. While third party

18

statements such as the one under consideration, are unsworn and unwitnessed, they sometimes can be of assistance regarding the claimant's ability to accomplish such things as: complete activities of daily living; maintain concentration, attention, and pace; engage in social activities; and adapt and manage him/herself. These statements, however, are, pursuant to 20 CFR 404.1520c and 416.920c, considered evidence from a nonmedical source. As such, I need not articulate how this evidence was considered in terms of persuasiveness. In relationship to SSR 16-3p, the report was considered to the extent the available medical of [*sic*] evidence supports such, in terms of medical signs and laboratory findings, and was considered, where applicable, in the formulation [of] the residual functional capacity.

*Id.*

The ALJ also considered the objective medical evidence, consulting much of the medical record, stating:

Turning to the objective medical evidence, the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged. I note that it is the claimant's responsibility to put forth evidence showing that she had an impairment and how severe it is during the period she alleges disability (20 CFR 404.1512(c) and 416.912(c). I have the authority to make a determination that the claimant's impairments are not incapacitating to the extent alleged. Although the subjective evidence of incapacity is an important consideration in determining disability, I have discretion to evaluate the objective medical evidence when assessing an individual's statements about the intensity, persistence, and limiting effects of symptoms and to arrive at an independent judgment, in light of medical findings and evidence regarding the true extent of the incapacity alleged by the claimant. The claimant testified, and understandably may honestly believe that her impairments are disabling. However, it is my duty to accurately determine the degree of her impairments based upon the totality of all of the other evidence of record. I have evaluated the claimant's subjective complaints and other allegations in accordance with 20 CFR 404.1529 and 416.929; and SSR 16-3p. The medical findings do not support existence of limitations greater than the above listed residual functional capacity.

Although there is evidence of the existence of the impairments listed above, the medical evidence does not support the alleged level of limitation arising from these impairments.

February 2020, records reveal that the claimant complained of low back stiffness and radiculopathy (Ex. 1F/28). However, examinations showed that she had grossly normal tone and muscle strength, full and painless range of motion of all major

19

muscle groups and joints, no laxity or subluxation of any joints, and no effusion, crepitus, or tenderness in major joints.

March 2020, x-rays of the lumbar spine showed degenerative disc disease (Ex. 1F/36). August 2020, notes show that she continued to complain of lower back pain. MRI revealed moderate arthritic changes at L5-S1 and disc protrusion at L4-5, but not pushing on the nerve root (1F/17 and 1F/33).

January 2021, notes show that she was provided with a prescription for Meloxicam, a topical gel, and physical therapy referral for low back pain (Ex. 5F/3). X-rays showed multilevel degenerative changes, but no acute abnormality (Ex. 6F/10).

At her April 2021, consultative examination, the claimant complained of lower back pain with radiation down both legs to her knees (8F/2). Upon examination, straight leg raising was positive at 75 degrees and she had pain with range of motion. However, gait and station were normal. She had 5/5 motor strength in both her upper and lower extremities, normal heel to toe walking, was able to stand on her heels and toes without difficulty, was able to stand on one leg without difficulty, and had no neurosensory deficits (Ex. 8F/3-4).

Other April 2021, notes show that the claimant was walking a mile with her friend, 2 to 3 times per week, for exercise (10F/29). A July 2021, [*sic*] examination showed no muscle aches or weakness, no arthralgias/joint pain, back pain, or swelling in the extremities (Ex. 10F/13). August 2021, notes show that she denied numbness and weakness (Ex/ 11F/32). December 2021, notes show that the claimant denied muscle weakness or arthralgias/joint pain (Ex. 13F/15). Gait and station were normal and sensation was grossly intact (Ex. 13F/16). March 2022 physical therapy notes show that the claimant rated her pain at 0/10 (Ex. 14F/3). In April 2022, she was discharged from therapy due to non-compliance (Ex. 14F/4).

TR 30-31.

Finally, the ALJ considered opinion evidence, including Dr. Huffman's opinion quoted above, stating:

As for the opinion evidence, in September 2020, physical therapist Dilesh Patel, found that the claimant was limited to sedentary work and unable to hold a full-time position, as she would need to lie down frequently during an 8-hour workday due to pain; and may be absent from regular work, depending on pain level (Ex. 3F/1-8). This opinion is unpersuasive, as it is not supported by any treatment notes, contains an issue reserved to the Commissioner, and appears to be based on the claimant's self-report of her abilities (Ex. 3F/1-8). Furthermore, it is inconsistent with the overall evidence, which shows essentially normal physical examinations (Ex. 1F/12, 8F/3-4, 10F/13, 11F/32, and 13F/16).

20

At the initial level, the State agency medical consultant assessed the claimant with the ability to perform the full range of medium exertional work (Ex. 1A/20-21 and 2A/20-21). At the reconsideration level, the State agency medical consultant assessed the claimant with the ability to perform light exertional work with postural limitations (Ex. 5A/14-15 and 6A/14-15). Although both are supported by a review and summary of the medical evidence available at the time of the opinions, the reconsideration opinion is found to be more persuasive (Ex. 1A/14-16, 1A/21-22, 2A/14-16, 2A/21-22, 5A/15-17, 6A/15-17). The reconsideration opinion of limiting the claimant to light work is more consistent with the overall evidence, which shows positive imaging of her back, but with improvement of symptoms with treatment (Ex. 1F/17, 1F/33, 1F/36, 8F/3-4, 10F/13, 11F/32, 13F/16).

TR 31-32.

Considering all this evidence, the ALJ finally concluded that:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not convincing to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms, limitations, and social functioning, which weakens the reliability of her allegations. She reported that she is able to care for her pet, perform personal care, prepare meals, perform household chores and laundry, drive a car, go out alone, shop in stores, handle her finances, spend time with others, and perform hobbies such as watching television and reading, which does not suggest that her symptoms are as limiting as the claimant has alleged in connection with this application (Ex. 5E/1-8, 10E/1-8, and Testimony).

Based on the entire record, including the testimony of the claimant, I conclude that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from a medically determinable "severe" impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling pain and limitations. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

TR 32.

While Plaintiff is correct that an ALJ must explain why a medical source's opinion was not adopted when it conflicts with an RFC assessment, the ALJ did so in these circumstances by explaining why Dr. Huffman and PT Patel's opinions were not adopted: they were not adequately supported by treatment notes and inconsistent with the overall objective medical evidence. TR 31-32. The ALJ described relevant portions of the objective medical evidence and highlighted how aspects of the subjective evidence (statements by Plaintiff and her daughter) and opinion evidence were inconsistent with each other. TR 28-32. As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including the opinions of Dr. Huffman and PT Patel, and ultimately determined that Plaintiff retained the RFC to perform light work as actually and generally performed. TR 33. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

## IV.   RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**